[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 7, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-11390
Non-Argument Calendar

_____

Agency Nos. A96-285-838
A96-285-839

REIN WILLIAM SOETENDAL,
MARIA DEL PILAR CAMARGO,

Petitioners,

versus

ALBERTO GONZALES, U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(December 7, 2006)**

Before BIRCH, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Petitioner Rein William Soetendal ("Soetendal")[1] petitions this court for review of the final order of the Board of Immigration Appeals ("BIA"), which affirmed, without opinion, the decision of the Immigration Judge ("IJ") denying his claims for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). For the reasons discussed below, we DENY Soetendal's petition.

## I. BACKGROUND

Soetendal, a native and citizen of Colombia, entered the United States in April 2000 on a non-immigrant B-2 tourist visa. Prior to the expiration of his B-2 visa, Soetendal applied for–and was granted–an L-1 ("intra-company transfer") visa, based upon the various business operations that he managed in the United States. Soetendal's L-1 visa was set to expire on 12 November 2002. On 14 November 2002, Soetendal filed an application with the former Immigration and Naturalization Service ("INS"), seeking asylum and withholding of removal based

---

[1] Soetendal has included his wife, Maria Del Pilar Camargo, as a party to this petition, and has named her as a secondary "rider" to his petition. The Immigration Judge's order in this case, however, referred only to Soetendal, individually. Similarly, the Immigration Judge's analysis in his opinion centered on Soetendal's claims for asylum, withholding of removal, and protection under CAT; the facts of Soetendal's wife's case were not discussed. Thus our discussion focuses solely on Soetendal's petition.

upon both his political opinion and his membership in a particular social group.

He also sought protection under CAT.

On 6 January 2003 the former INS served Soetendal with a Notice to Appear ("NTA"), charging that he was removable pursuant to INA § 237(a)(1)(C)(i), 8 U.S.C. § 1227(a)(1)(C)(i), for failing to comply with the terms of his L-1 status. On February 18, September 16, and November 4, 2003, respectively, Soetendal made appearances before the IJ. He conceded that he was removable. On 15 October 2004, after a number of separate continuances, the IJ held a removal hearing on Soetendal's application.

Soetendal's testimony at the removal hearing confirmed the events that had been described in his written application. Soetendal testified that he was a successful businessman in Colombia who had been active in the Liberal Party. He indicated that he had provided financial support to Liberal Party candidates and that he had volunteered for some campaigns, both at the local and the national level. He further testified that in February 2000[2] he spoke at the Bogota Chamber

---

[2] Soetendal's testimony during the removal hearing was inconsistent as to the timing of his speech. At one point, he indicated that the speech occurred in February 2002. R1 at 91. Later, he stated that it was February 2001. Id. at 92. Despite these inconsistencies, Soetendal's application makes clear that the speech occurred in February 2000, a few months prior to his entering the United States. Id. at 225.

of Commerce on behalf of the presidential campaign of Dr. Alvaro Uribe Velez.[3]

Soetendal stated that the subject of the meeting was how best to confront the violence being wrought by the Revolutionary Armed Forces of Colombia (FARC), a Marxist guerilla group. During his speech to the Chamber, Soetendal encouraged the attendees to support Dr. Uribe because he would "present order in the country" and treat the FARC guerillas with "a strong fist." R1 at 91. Soetendal testified that, two days after the speech, he received a threatening phone call from a caller purporting to represent FARC. Soetendal stated that the caller ordered him to stop supporting Dr. Uribe, and stated on cross-examination that the caller demanded a monetary contribution to support FARC's revolutionary cause. After this incident, Soetendal apparently received three to four threatening phone calls a day from representatives of FARC.

Soetendal then testified that in April 2000 he was "intercepted" in his car by six men who stated that they were FARC members. Id. at 93. The assailants ordered him out of the car, but instead he accelerated and drove away. The men fired a number of shots at his car, but Soetendal managed to escape uninjured. On cross-examination, Soetendal confirmed that the only statement made by the

---

[3] The record erroneously refers to the Liberal presidential candidate as "Dr. Oliveras," R1 at 92-93, but Soetendal's application and pleadings make clear that he was campaigning for Dr. Alvaro Uribe Velez, who was elected president of Colombia in 2002, and was re-elected in 2006. See, e.g., id. at 27, 55, 89-90, 221, 225, 239, 243.

assailants during the assault was the assertion that they were FARC affiliates.

Soetendal testified that, on the same day as the attempted attack, a phone call was

placed to his office, ordering his employees to cease working for him because he

had been targeted as an enemy of FARC. He testified that he was afraid to return

to Colombia because of the continuing threat posed to him by the FARC rebels.

Soetendal stated that this threat existed on a country-wide basis, because of

FARC's network of operatives throughout the country.

In his oral decision, the IJ first noted that section 208 of the INA requires

that applicants for asylum must file their application "within 1 year after the date of

[the] alien's arrival in the United States," INA § 208(a)(2)(B); 8 U.S.C. §

1158(a)(2)(B), and that, because Soetendal's application was filed over two years

after his arrival in the United States, it was arguably untimely. Nevertheless, the IJ

observed that the INA provides that if an asylum applicant demonstrates "either the

existence of changed circumstances . . . or extraordinary circumstances relating to

the delay in filing the application," then the IJ can consider the application,

notwithstanding the fact that it is untimely. INA § 208(a)(2)(D); 8 U.S.C. §

1158(a)(2)(D). The IJ found that Soetendal had planned to re-extend his L-1 visa

before it expired, but that, for reasons unknown, he had failed to do so. Finding

this to be a valid "changed circumstance," the IJ concluded that he would consider

5

the merits of Soetendal's application, despite the fact that it was untimely. R1 at 54-55.

The IJ then stated that he found Soetendal's testimony to be fully credible.[4] The IJ found, however, that Soetendal had failed to prove that he was eligible for asylum. First, the IJ observed that Soetendal's claim had failed to show membership in a particular social group as a basis for his asylum claim. Thus, the IJ stated, Soetendal would only be eligible for asylum if he could demonstrate persecution due to an actual or imputed political opinion.

Turning to the merits of Soetendal's asylum claim, the IJ suggested that there was insufficient evidence of past persecution because the threatening phone calls failed to meet that threshold. As to the attempted attack on Soetendal's car, the IJ found that, even assuming such an attack constituted persecution, there was insufficient evidence to suggest that it was "a kidnap because of [Soetendal]'s political activities." Id. at 59. Observing that kidnappings and robberies are

---

[4] Soetendal argues in his petition that the IJ somehow abused his discretion because he found Soetendal's testimony to be credible, but then went on to deny his application for asylum. He seems to suggest that once an applicant is deemed to be fully credible, a grant of asylum should automatically follow. See Br. of the Pet'r at 12-13 ("[T]he Immigration Judge made crystal clear that there was no doubt about the credibility of the Petitioner . . . . [N]owhere in the record does the IJ state that the Petitioner's testimony is not credible or untrue."). It bears noting, however, that there is nothing inconsistent about finding an asylum applicant to be fully credible, but nevertheless denying his application due to a paucity of evidence. See, e.g., Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1240 (11th Cir. 2006) (affirming a denial of asylum despite the fact that the applicant was deemed to be credible); Huang v. U.S. Att'y Gen., 429 F.3d 1002, 1007 (11th Cir. 2005) (per curiam) (same).

frequently carried out by FARC affiliates in Colombia, the IJ stated that Soetendal had failed to show that the attempted attack was due to his political views, rather than a random criminal act. Finally, the IJ found that Soetendal had failed to demonstrate a well-founded fear of future persecution, since an objectively reasonable person would not conclude that Soetendal would be unable to safely return to Colombia.

Because the IJ concluded that Soetendal had failed to meet his burden of demonstrating asylum eligibility, he likewise denied Soetendal's claim for withholding of removal. The IJ further denied Soetendal's claim for protection under CAT, since the IJ found no evidence that the government of Colombia had consented to, or acquiesced in, the acts of torture being perpetuated by FARC. See 8 C.F.R. § 208.18(a)(1). Accordingly, Soetendal's application was denied in its entirety, and he was ordered to be removed to Colombia.

The BIA affirmed the decision of the IJ, without opinion. Soetendal then filed a motion asking the BIA to reconsider its decision. Because the BIA found no error with the IJ's decision, it denied Soetendal's motion. This petition followed.

## II. DISCUSSION

A. Standard of Review

7

"The appropriate standard of review is well-settled." Mazariegos v. Office of U.S. Att'y Gen., 241 F.3d 1320, 1323 (11th Cir. 2001). We review legal issues de novo, Mohammed v. Ashcroft, 261 F.3d 1244, 1247 (11th Cir. 2001), and "administrative fact findings under the highly deferential substantial evidence test," Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc) (citations omitted), cert. denied, 544 U.S. 1035, 125 S. Ct. 2245 (2005). Under that standard, we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (internal quotations and citation omitted). "To reverse a factual finding by the BIA, this Court must find not only that the evidence supports a contrary conclusion, but that it compels one." Farquharson v. U.S. Att'y. Gen., 246 F.3d 1317, 1320 (11th Cir. 2001) (citation omitted). Indeed, "the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi, 386 F.3d at 1027 (citation omitted). Instead, we will reverse a BIA's findings of fact "only if the evidence presented by the applicant is so powerful that a reasonable fact finder would have to conclude" otherwise. Mazariegos, 241 F.3d at 1323.

In reviewing the record on appeal, "[w]e review only the [BIA's] decision, except to the extent that it expressly adopts the IJ's opinion." Al Najjar, 257 F.3d

8

at 1284 (citation omitted).  "Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well."  Id. (citation omitted).  In Soetendal's case, the BIA expressly adopted the IJ's decision, without further comment.  Therefore, we will review the analysis set forth in the IJ's opinion as if it were the BIA's.  See id.

B.  Asylum

Section 208 of the INA provides that "[a]ny alien who is physically present in the United States . . . irrespective of such alien's status, may apply for asylum."  INA § 208(a)(1), 8 U.S.C. § 1158(a)(1) (2002).  The Attorney General, in his discretion, may grant asylum to an alien if he "determines that such alien is a refugee within the meaning of section 101(a)(42)(A) [of the INA]."  INA § 208(b)(1), 8 U.S.C. § 1158(b)(1).  A "refugee" is defined in section 101 as one who

> is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A).  The asylum applicant bears the burden of proving statutory "refugee" status.  8 C.F.R. § 208.13(a).  To prove refugee status, "the alien must establish a 'well-founded fear' that his or her political opinion (or other statutorily listed factor) will cause harm or suffering that

9

rises to the level of 'persecution.'" D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 818 (11th Cir. 2004) (citation omitted). A well-founded fear of persecution may be established by showing either: (1) past persecution; or (2) a 'well-founded fear' of future persecution. Sepulveda v. U.S. Att'y. Gen., 402 F.3d 1226, 1230-31 (11th Cir. 2005) (per curiam) (citing 8 C.F.R. § 208.13(a),(b)).

1.    Past Persecution

Soetendal's petition first argues that the IJ erred in denying his claim for asylum because he clearly established past persecution. Specifically, he argues that the threatening phone calls, the threats to his employees, and the attempted attack on him, taken together, rise to the level of past persecution. We disagree. An applicant seeking to establish asylum based on past persecution must show: (1) that he suffered persecution in the past; and (2) that the persecution was on account of a protected ground. Silva, 448 F.3d at 1236 (citing Sepulveda, 401 F.3d at 1230-31). The IJ concluded that Soetendal had failed on both grounds–that is, that the threatening phone calls did not rise to the level of persecution, and, moreover, that the attempted attack on Soetendal (though arguably persecution) was not shown to be "on account of" his political activity. Id. Substantial evidence supports both of these determinations.

First, with respect to the threats against Soetendal and his employees, while the INA does not define the term "persecution," we have observed that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." Id. at 1237 (citing Sepulveda, 401 F.3d at 1231) (alteration omitted). "Not all exceptional treatment is persecution." Gonzalez v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000). In other cases, we have made clear that threatening phone calls and letters constitute mere "harassment and intimidation," and that they fail to rise to the level of persecution. Silva, 448 F.3d at 1237. See also Sepulveda, 401 F.3d at 1231 (stating that "menacing telephone calls and threats . . . do not rise to the level of past persecution that would compel reversal of the IJ's decision") (citation omitted). Therefore, substantial evidence supports the IJ's conclusion that the telephone threats to Soetendal and his employees did not constitute persecution.

Second, with respect to the armed attempt on Soetendal's life, we conclude that although such conduct was arguably persecution, see Silva, 448 F.3d at 1238, it was not shown to have a sufficient nexus with Soetendal's political activities. An asylum applicant must provide evidence that "he was mistreated because of his political opinion, or one of the other grounds, rather than for some other reason." Mazariegos, 241 F.3d at 1323 (internal quotations omitted). Indeed, "evidence that

11

either is consistent with acts of private violence or the petitioner's failure to cooperate with guerillas, or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground." Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1258 (11th Cir. 2006) (per curiam) (quoting Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 438 (11th Cir. 2004)).

In this case, Soetendal presented evidence that he was accosted by six men, was ordered out of his vehicle, and was shot at when he attempted to flee. He testified, however, that the only statement the assailants made during the course of the assault was the assertion that they were representatives of FARC. The IJ concluded that there was insufficient evidence to suggest that "this was a kidnap because of [Soetendal]'s political activities." R1 at 59 (emphasis added). Substantial evidence supports that conclusion. Indeed, although the timing of the assault–approximately two months after Soetendal's anti-FARC speech–would allow one to infer that the attack might have been directed at Soetendal because of his political activism, the record does not compel such a conclusion.

Both Sepulveda and Silva are instructive on this point. In Sepulveda, the asylum applicant was the victim of a bombing at the restaurant where she worked; she claimed that the bombing clearly constituted persecution, and that it had been

carried out by the ELN, a Colombian Marxist guerilla group, because of her political activism. 401 F.3d at 1229-1231. We disagreed, concluding that, although the evidence permitted the inference that the bombing was due to the applicant's political activities, it did not compel such a conclusion. Id. at 1231.

Similarly, in Silva, the asylum applicant, a political activist, was shot at by FARC guerillas while she was driving in her car. 448 F.3d at 1233. On appeal, she contended that the shooting constituted persecution and that it had been clearly directed at her political involvement. Id. at 1237. We rejected that assertion, holding that the evidence of the shooting, standing alone, did not "compel the conclusion that the shooting was connected to her political activity." Id. at 1238. We observed that "Colombians routinely suffer similar incidents of terroristic threats and violence," and that therefore the evidence did not show that "the shooting was indisputably related to [the applicant]'s political activity." Id. Sepulveda and Silva are squarely on point with Soetendal's case. We find that substantial evidence supports the IJ's determination that there was insufficient proof of a nexus between the attempted kidnapping and Soetendal's speech to the Chamber of Commerce two months earlier. Accordingly, we cannot find that the record compels a finding of past persecution.

2. Well-Founded Fear of Future Persecution

13

Soetendal also argues that the record compels the conclusion that he has a well-founded fear of suffering persecution in the future, in the event he is forced to return to Colombia. We disagree. To demonstrate a well-founded fear of future persecution, an asylum applicant must show: (1) a "subjectively genuine and objectively reasonable" fear of persecution; (2) that is based upon a statutorily protected ground. Silva, 448 F.3d at 1236 (internal quotations and citations omitted). As to the first, we have held that a well-founded fear has both subjective and objective components. Al Najjar, 257 F.3d at 1289. "The subjective component is generally satisfied by the applicant's credible testimony that he or she genuinely fears persecution." Id. (citation omitted). Here, the IJ readily found that Soetendal's fear was "subjectively genuine." R1 at 58.

The objective prong, however, requires that the applicant's fear be "objectively reasonable." Al Najjar, 257 F.3d at 1289 (citations omitted). The applicant must present "specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution." Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005) (citation and internal quotations omitted). In Soetendal's case, the record does not compel the conclusion that FARC retains an inclination to single him out for persecution in the event he returns to Colombia. Soetendal presented some evidence of his providing support to Liberal Party

14

candidates, but he did not show that he had particular notoriety as a party activist. Indeed, the record suggests that his involvement in politics was due primarily to the fact that he married into a family with some ties to the Liberal Party; his application conceded, however, that his energies were primarily focused on running his various businesses in Colombia, which he stated "demanded a great amount of [his] time." R1 at 225. Soetendal referenced only a single speech in 2000–to a small Bogota business group–in which he was critical of FARC's policies. As in Sepulveda, the evidence presented does not indicate that Soetendal's particular notoriety as an activist would outlast his six-year absence from Colombia. 401 F.3d at 1232. Thus we are not compelled to find that Soetendal's fear of being singled out by FARC for persecution is objectively reasonable and well-founded.

Moreover, even if we were to find Soetendal's fear of future persecution to be objectively reasonable, he would still bear the burden of showing "a causal connection between [his] political opinion and the feared persecution." Id. at 1231. As discussed in the previous section, there was insufficient evidence to show that FARC would likely single out Soetendal because of his political opinion. While FARC's violent and lawless guerilla activities in Colombia arguably justify

15

Soetendal's hesitations about the prospect of returning to Colombia, there was not a showing that the prospect of future harm is directly related to his political views.

In summary, we conclude that substantial evidence supports the IJ's determination that Soetendal failed to show either past persecution, or a well-founded fear of future persecution, on account of his political opinion. While we do not question the genuineness of Soetendal's concerns about returning to his home country, his application fails to present the "rare case" in which the record compels a finding of asylum eligibility. Silva, 448 F.3d at 1239. The IJ properly denied his application.[5]

## C. Withholding of Removal

Substantial evidence also supports the IJ's finding that Soetendal failed to qualify for withholding of removal under the INA. "An applicant for withholding of deportation must show a 'clear probability of persecution,' or that he will more

---

[5] Soetendal's petition cites to language in the IJ's oral opinion in which he indicated that the facts of Soetendal's case–specifically the armed assault in his car–presented a "mixed motive case." R1 at 59. A mixed motive case is one in which "the evidence may reasonably suggest [persecution due to] mixed motives, at least one or more of which is related to a protected ground." In re S- P-, 21 I. & N. Dec. 486, 495 (1996). In such cases, the BIA has held that the applicant's burden is not to show "the exact motivation of a persecutor where different reasons are possible," but merely to show that "those who harmed [the applicant] were in part motivated" by the applicant's actual or imputed political views. Id. at 494-95 (internal quotations and citations omitted) (emphasis added). Yet in his oral decision, the IJ went on to state that he would not decide Soetendal's case as one of mixed motives since there was absolutely no showing of a nexus between Soetendal's mistreatment and his actual or imputed political views. See R1 at 59 ("[T]here's certainly nothing in the record to say that this was a kidnap because of the respondent's political activities."). In short, Soetendal's reliance on the mixed motive analysis of asylum cases is misplaced.

16

likely than not be persecuted if deported." Nkacoang v. INS, 83 F.3d 353, 355 (11th Cir. 1996) (citing INS v. Stevic, 467 U.S. 407, 413, 104 S. Ct. 2489, 2492 (1984)). This is a more stringent standard than the "well-founded fear" threshold required for asylum. Al Najjar, 257 F.3d at 1292-93. Thus, "[i]f an applicant is unable to meet the 'well-founded fear' standard for asylum, he is generally precluded from qualifying for . . . withholding of deportation." Nkacoang, 83 F.3d at 355 (citation omitted). Because Soetendal failed to demonstrate a well-founded fear of persecution sufficient to support his asylum claim, the IJ properly found that he was unable to satisfy the greater burden attending withholding of removal.

D. Protection Under CAT

Soetendal also argues that the IJ erred in denying his application for relief under CAT. In making out a claim under CAT, "[t]he burden of proof is on the applicant . . . to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). "Torture" is defined as:

> [A]ny act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for [the purpose of] . . . intimidating or coercing him . . .

8 C.F. R. § 208.18(a)(1). In addition, an applicant for CAT protection must show that the torture will be "inflicted by or at the instigation of or with the consent or

17

acquiescence of a public official or other person acting in an official capacity." Id.

Such acquiescence "requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 208.18(a)(7). Relief under CAT includes the mandatory remedy of withholding of removal. See 8 C.F.R. § 208.16(c)(4).

Here, the IJ properly concluded that Soetendal failed to make out a prima facie case under CAT. First, the burden of proof for an applicant seeking relief under CAT, like that for an applicant seeking withholding of removal, is higher than the burden imposed on an asylum applicant. Al Najjar, 257 F.3d at 1303. Thus an applicant who fails to show a well-founded fear under the asylum inquiry is not likely to demonstrate a likelihood that they will be tortured. Id.

Moreover, Soetendal failed to present evidence that the Colombian government acquiesced in the acts of violence being perpetuated by FARC. In fact, the State Department's Country Report on Colombia–which was included as part of Soetendal's application–indicates that the Colombian government has made substantial efforts to combat FARC's violent activities. See, e.g., R1 at 108 (referencing the government's "anti-kidnaping task forces," and stating that "[t]he Government's emphasis during the year on improving security resulted in

18

significant improvements" in the number of FARC abuses); id. at 145 (discussing the government's protection program for "human rights workers, union leaders, journalists, mayors, and several other groups" who are threatened by FARC). Rather than suggesting governmental acquiescence, the Report indicates that FARC has posed a challenge to the Government, id. at 108, and that Colombian government employees are "among the . . . preferred victims" of FARC's violent acts, id. at 151. The IJ was entitled to rely upon this Report in reaching his decision. See Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1243 (11th Cir. 2004). Because Soetendal did not present evidence of governmental acquiescence, the IJ properly denied his application for protection under CAT.

### III.  CONCLUSION

Soetendal has petitioned this court for a review of the IJ's order denying his applications for asylum and withholding of removal under the INA and his request for protection under CAT. Substantial evidence supports the IJ's conclusion that Soetendal did not suffer past persecution. Nor did he have a well-founded fear of future persecution based upon a statutorily protected ground. Substantial evidence further supports the IJ's determination that Soetendal failed to show eligibility for withholding of removal or for protection under CAT. Accordingly, Soetendal's petition is **DENIED.**

19